Filed 11/8/22 In re M.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.L. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078915 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J287762, J287763, J287764, J287765 & J287766) |
| v. | |
| M.L. et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. Erin K. Alexander, Judge. Affirmed.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant, M.L.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant, D.C.

1

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

M.L. (father) appeals from an order terminating reunification services as to his children, A.L., M.S.A.L., M.L., H.L., and M.L.L. (the children). He contends the matter must be conditionally reversed and remanded because the juvenile court and the San Bernardino County Children and Family Services (CFS) failed to comply with the initial duty of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et. seq.) (ICWA) and related California law (Welf. & Inst. Code,[1] § 224.2). D.C. (mother) filed a separate brief on appeal and simply joins in father's arguments. Respondent CFS has filed a request to augment the record with postjudgment evidence showing it has made the requisite inquiry and the court, after considering the results of that inquiry, found that ICWA did not apply. Based on that evidence, CFS contends the appeal is moot and should be dismissed. We affirm.

PROCEDURAL BACKGROUND

On January 13, 2021, CFS filed a section 300 petition on behalf of the children.[2] The petition alleged that the children came within section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling).

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] CFS filed a separate petition for each child; however, since the petitions contain the same allegations, we will simply refer to them as one petition.

2

The social worker filed a detention report and stated that she met with father and mother (the parents), and father reported that mother and the children would be staying with the paternal uncle in Victorville while he finished remodeling their house. Father could not provide an address for the uncle, but provided the uncle's contact information. The social worker called the paternal grandmother (PGM), and she stated the parents would be spending the night at her house in San Bernardino.

On January 14, 2021, the court held a detention hearing. The court asked the parents if they had any Native American ancestry. Mother said no. However, father said, "I'm still doing the testing for that. We will still have to clarify it, so no for now." The court asked father if he thought he may have heritage but just did not know what tribe. Father replied, "Yes. That's why we said no until we verify which one." Father and mother each filed an ICWA-020 form and marked the box stating, "I have no Indian ancestry, as far as I know." The court ordered the parents to engage in services, have their home assessed, and drug/alcohol test that day, and the parents agreed. It then continued the matter to January 20, 2021.

At the continued hearing on January 20, 2021, the court decided to keep the children with the parents since the parents were following directions. It found the children came within section 300 but detained them with the parents on the condition that the parents continue to cooperate with CFS and test clean. The court advised the parents that failure to test would be considered a positive test and that they were required to live at a location approved by CFS, which was currently the PGM's home.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on February 17, 2021, and reported that the parents and children were still residing at the PGM's home. The social worker also stated that ICWA did not apply, noting father and mother indicated on the ICWA-020 forms that they did not have Indian ancestry.

The court held a contested jurisdiction/disposition hearing on April 26, 2021. Father informed the court that he was now claiming Indian heritage in the Omeca tribe. The court asked if it was a federally recognized tribe, and father said, "Yes, for Southern California." Father said he was not an enrolled member and was not sure if he was eligible for enrollment. He said his ancestry was through his mother, but she was not enrolled or eligible for enrollment. County counsel informed the court that there was "no such tribe identified as O-m-e-c-a that [she] could find federally recognized or not." She added, "I was able to find the O-l-m-e-c tribe, but that's a Mexican, not a North American tribe." The court stated, "Right now I don't believe I have reason to know. Father's indicating heritage in a tribe that's not federally recognized . . . ." Father's counsel informed the court, "[T]his is the first I've heard of it. I'll have to talk to him over lunch. See if there's a new ICWA form he wants me to fill out. This is news to me. I will try to get the Court more information after lunch." Father subsequently appeared to have a medical issue, so the matter was continued. At the continued hearings held on June 9, 2021, and August 19, 2021, there was no further discussion regarding ICWA by father. The juvenile court followed the social worker's recommendation and found that

4

ICWA did not apply.  It also declared the children dependents, removed them from the custody of the parents, and ordered reunification services.

*Six-month Status Review*

The social worker filed a six-month status review report on February 18, 2022, recommending that reunification services be terminated and a section 366.26 hearing be set.  The social worker reported that the parents did not accept the reasons why CFS was involved with their family.  The social worker continued to state that ICWA did not apply, but also reported that "[n]oticing requirements under ICWA have been initiated."

The court held a contested six-month status review hearing on April 28, 2022. County counsel noted they were actually past the 12-month review date and asked the court to follow the social worker's recommendations, noting the parents had not completed their case plans.  The court stated that the parents had minimally engaged in their case plans, that mother failed to recognize the concerns or risks in the case, and father did not accept responsibility for the reasons for the dependency case.  The court also commented that the parents had every opportunity to engage in the process and reunify, but it was clear they were "more invested in fighting their perceived grievances with the system than they are with reunifying with the children."  The court adopted the majority of the social worker's recommended findings and orders, including terminating reunification services and setting a section 366.26 hearing.  The court found it would be in the best interests of the children to consider terminating parental rights at the section 366.26 hearing.  It then set a permanent plan review hearing (PPR) for October 28, 2022. The court did not adopt the social worker's recommended finding that ICWA did not

apply. Rather, it stated, "I will order the agency, particularly if we're in the process of contacting relatives for potential placements, to make sure to make ICWA inquiry of any known relatives. I believe the case may have originated under the old process, so we'll need to document that we've spoken to the grandmother that currently has the kids, as well as any other known relative, and I'll ask that that be included in the PPR report, and the parents have been ordered back, that's October the 28th at 8:30."

That same day, father and mother filed Notices of Appeal with regard to the termination of reunification services.

## DISCUSSION

### Father Has Failed to Demonstrate Error

Father[3] argues that CFS and the court failed to comply with the initial duty of inquiry, asserting that he indicated possible Native American ancestry through his mother, and CFS did not ask the PGM or the paternal uncle about this potential ancestry, even though it had their contact information. Father claims that since CFS "never asked these readily available relatives about possible Native American ancestry . . . the juvenile court's finding that ICWA did not apply was unsupported by substantial evidence." Thus, he contends the matter must be reversed and remanded for CFS to inquire of the PGM and paternal uncle, and any other relatives who may become available, regarding whether the children may be Indian children. CFS requests that we augment the record with postjudgment evidence which shows the social worker spoke with paternal relatives,

_____

[3] Since mother simply joins in father's arguments, this opinion will just refer to father as the proponent of the arguments on appeal, for the sake of simplicity.

6

pursuant to the court's April 28, 2022 order, and they all denied Indian ancestry. It argues this evidence renders father's appeal moot. CFS also points out that father appealed immediately after the April 28, 2022 hearing, prior to CFS having time to actually comply with the court's order. We affirm the judgment and deny the request to augment the record as unnecessary.

A. *Father Has Failed to Affirmatively Demonstrate Error with Regard to the Termination of Services*

At the outset, we observe that father's notice of appeal (Judicial Council Forms, form JV-800), filed on April 28, 2022, indicates he was appealing only from the order entered that day terminating his reunification services. Under the heading, "I appeal from the findings and orders of the court (*specify date of order or describe order*)," father wrote, "Termination of family reunification services on 4-28-22." Under the catchall box for, "Other appealable orders relating to dependency (*specify*)," he similarly wrote, "Termination of family reunification services 4/28/22."[4]

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see *In re A.L.* (2022) 73 Cal.App.5th 1131, 1161 [" ' "it is [appellant's] burden on appeal to affirmatively demonstrate error—it will not be presumed." ' "].) Father has not raised any issue in his brief regarding the termination of reunification services. Consequently,

---

[4] Mother checked the same boxes and wrote the same things as father on her notice of appeal.

he has not demonstrated error with regard to the termination of his services, and it will not be presumed here.

B. *Father Has Failed to Affirmatively Demonstrate Error As to ICWA*

Father contends that we should reverse the court's finding that ICWA did not apply since CFS and the court failed to comply with the initial duty of inquiry. Even if we liberally construe the notice of appeal to include ICWA, we conclude that father has failed to demonstrate error.

1. *Relevant Law Regarding ICWA*

ICWA establishes minimum federal standards that state courts are required to follow before they may lawfully place an Indian child in foster care or terminate parental rights to an Indian child. (25 U.S.C. §§ 1902, 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).) ICWA requires that notice of the state court proceedings be given to Indian tribes "where the court knows or has reason to know that an Indian child is involved, . . ." (25 U.S.C. § 1912(a); see *Isaiah W.*, at p. 8; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740-741.) ICWA's notice requirement, which is also codified in California law (§ 224.3), "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene" in the state court proceeding or exercise its own jurisdiction in the matter. (*Isaiah W.*, at p. 5; see *In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The tribe has the right to determine whether the child is eligible for membership and, thus, whether the child is an Indian child. (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

Although "ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child," federal regulations implementing ICWA "require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882-883 (*Austin J.*); see 25 C.F.R. § 23.107(a) (2022).)

California law imposes a similar duty of inquiry on courts. The juvenile court and CFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9, 11-12.) The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052; see § 224.2.) The agency's duty of inquiry includes asking

9

"extended family members" whether they know or have reason to know that the child is an Indian child. (§ 224.2, subd. (b).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

2. *The Record Shows the Court Ordered CFS to Inquire Further*

Father claims the court's finding that ICWA did not apply should be reversed because CFS and the court failed to discharge the duty of initial inquiry, specifically by not interviewing the PGM and the paternal uncle. However, father has failed to demonstrate error.

Both parents denied Indian ancestry at the beginning of the case in January 2021. Father subsequently claimed he had Indian heritage in the Omeca tribe, but was not an enrolled member and was not sure if he was eligible for enrollment. County counsel informed the court there was no federally recognized tribe named Omeca, and thus the court stated it had no reason to know father had Indian heritage. At the contested jurisdiction/disposition hearing in August 2021, the juvenile court found ICWA did not apply.

10

However, although the court initially made a finding that ICWA did not apply at the recent contested six-month status review hearing on April 28, 2022, it ordered CFS to inquire further about potential Indian ancestry. Specifically, the court stated: "I will order the agency, particularly if we're in the process of contacting relatives for potential placements, to make sure to make ICWA inquiry of any known relatives. . . . [W]e'll need to document that we've spoken to the grandmother that currently has the kids, as well as any other known relative, . . ." Thus, consistent with its continuing duty to inquire about the children's potential Indian ancestry (§ 224.2, subd. (a)), the court ordered CFS to make ICWA inquiry of any known relatives, including the PGM. Contrary to father's claim, the court did not err by finding ICWA did not apply at the April 28, 2022 hearing. Rather, the record shows the court complied with its ICWA duty. The parents appealed on the same day the juvenile court ordered that further ICWA inquiry be made in this case.[5] Thus, their appeal based upon the court's purported finding that ICWA did not apply fails.

In sum, because father has failed to affirmatively demonstrate error as to the termination of reunification services or ICWA compliance, we must affirm the judgment. Accordingly, we deny the request to augment the record with postjudgment evidence as unnecessary.

---

[5] The results of the further ICWA inquiry had not been received and could not be known at that time.

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS _____

J.


We concur:


McKINSTER _____

Acting P. J.


MILLER _____

J.